UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIKOLAOS AGAS,

       Plaintiff,                   CIVIL ACTION NO. 09-12093

       v.                           DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF             MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. PROCEDURAL HISTORY**

*A. Proceedings in this Court*

On May 29, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 2). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (Dkt. 4). This matter is currently before the Court on cross-motions for summary judgment (Dkt. 16, 20).

*B. Administrative Proceedings*

Plaintiff filed the instant claims on August 3, 2005, alleging that he became unable to work on December 9, 2004 (Tr. 65). The claim was initially disapproved by the Commissioner on January 19, 2006 (Tr. 47). Plaintiff requested a hearing and, on August 14, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) George Gaffaney, who considered the case *de novo*.

-1-

In a decision dated September 11, 2008, the ALJ found that Plaintiff was not disabled (Tr. 12 ). Plaintiff requested a review of this decision on November 6, 2008 (Tr. 319). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 4, 319), the Appeals Council, on April 2, 2009, denied Plaintiff's request for further review (Tr. 5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence does not support the Commissioner's determination. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for a new hearing.

## II.    STATEMENT OF FACTS

### *A.    ALJ Findings*

Plaintiff was 48 years old at the time of the most recent administrative hearing (Tr. 23). Plaintiff's past relevant work history included work as auto mechanic/repair technician (Tr. 23, 72). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 9, 2004 (Tr. 17). At step two, the ALJ found that Plaintiff had the following "severe" impairments: a major depressive disorder, diabetes mellitus, right shoulder tendinitis, impingement with three rotator cuff repair surgeries, degenerative disc disease of the cervical spine and obesity. *Id.* At step three, the ALJ

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 18). Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a reduced range of light work.... Specifically, [Plaintiff] can lift ten pounds frequently and 20 pounds occasionally. He can sit for six hours and stand for six hours in a workday, and he can walk for two blocks at a time. He can not climb ladders and he can occasionally climb stairs, balance, stoop, kneel, crouch, and reach in all directions with his right hand. [Plaintiff] is limited to simple, routine tasks (unskilled work) and can frequently interact with others" (Tr. 19). At step four, the ALJ found that Plaintiff could not perform his previous work as an auto mechanic, as that work exceeded Plaintiff's RFC (Tr. 23). At step five, the ALJ denied Plaintiff benefits, since the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as: small parts assembler (8,300 jobs) and inspector (2,400 jobs) (Tr. 24).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff alleges disability since December 9, 2004 (Tr. 65, 68, 72), due to back, neck, shoulder injuries, and stress (Tr. 71). On September 27, 2005, Plaintiff completed a Function Report-Adult (Tr. 82-89). He reported living in a house with his family. He was living a very sedentary and inactive life, with most days involving watching television and sleeping on and off throughout the day (Tr. 82, 86). Sometimes he would leave home to go to a doctor's appointment or to the grocery store with his wife (Tr. 82, 85). Plaintiff reported that he can no longer do the following activities that he had been able to do before his illness: work, socialize, wash his own back, dress, stay awake all day (Tr. 83-89). He also reported that he cannot dress due to pain in his shoulder, arm and neck, and needs help to wash himself and care for his hair. Plaintiff uses his non-

dominant hand to shave and toilet. He needs reminders to take care of his personal needs and grooming, due to forgetfulness (Tr. 84). His wife reminds him to take his medicine, prepares the meals and does the household chores. Plaintiff does not do house or yard work because of pain in his arms, shoulder and neck and chronic fatigue (Tr. 85). He can drive a car and go out alone. He reported that his ability to handle money has changed since his illness, because of his short attention span, dizziness and headaches (Tr. 86). He attends church. His wife sometimes will accompany him when he goes out, and will drive when his head or arm hurts (Tr. 86). Although he reported no problems getting along with others, plaintiff is quieter since his illness, and is always tired (Tr. 87).

Plaintiff reported having problems with lifting, reaching, memory, concentration, completing tasks, understanding, following instructions and using hands, because of pain in his arms, hands, shoulders and neck, and not sleeping well at night with daytime fatigue (Tr. 87). He is right handed. He thinks he can walk more than half a mile, but is not sure. *Id.* He can pay attention for 5-10 minutes, but does not finish what he starts, and may have trouble understanding and remembering written or spoken instructions, depending on how he feels. Plaintiff believes that he gets along well with authority figures and has never been fired or laid off from a job because of problems getting along with others. He has a difficult time handling stress. He needs to wear glasses all of the time. *Id.*

### 2. Medical Evidence

Plaintiff's primary care physician was Theodore Tangalos, M.D. Dr, Tangalos completed a "Treating Physician Medical Questionnaire" on May 6, 2008 (Tr. 299-302). Dr. Tangalos reported that Plaintiff was 66 inches (5'6") tall and 246 pounds (Tr. 300). He noted that Plaintiff complained of right shoulder pain, fatigue, dizziness, anxiety, depression, bilateral forearm pain, low back pain, upper extremity weakness, headaches, palpitations, heartburn, neck pain, and numbness (Tr. 300).

Dr. Tangalos diagnosed Plaintiff with a right rotator cuff tear, right shoulder impingement, cervical disc herniation, low back pain, diabetes, hypertension, headaches, vertigo, sleep apnea, depression, and multiple joint pains (Tr. 300). Dr. Tangalos indicated that Plaintiff's prognosis was poor (Tr. 300). He opined that Plaintiff needed "to rest or recline during the day" due to fatigue and dizziness (Tr. 300). Dr. Tangalos also opined that Plaintiff could only stand for ten minutes out of an eight-hour day, and sit for only thirty minutes (Tr. 301) and that Plaintiff could only walk half-a-block to one block due to radiculopathy (Tr. 301). Additionally, Dr. Tangalos opined that Plaintiff could only lift five pounds occasionally and nothing frequently (Tr. 301). He indicated that Plaintiff was limited by 30 percent in his ability to bend, squat, kneel, climb, and balance (Tr. 301) and that Plaintiff was unable to climb, should avoid all temperature extremes, and needed to avoid all fumes (Tr. 301). Dr. Tangalos opined that Plaintiff's symptoms would markedly affect his ability to maintain sustained concentration, attention, and/or performance in a work setting (Tr. 302). He stated that Plaintiff would miss work five times a month or more (Tr. 302).

On January 6, 2006, James Tripp, Ed.D., reviewed the record and completed a "Psychiatric Review Technique" form (Tr. 224-37). He opined that Plaintiff had no restriction in the following functional areas: "Restriction of Activities of Daily Living" and "Difficulties in Maintaining Social Functioning" (Tr. 234). He also opined that Plaintiff had a moderate degree of limitation in the functional area of "Difficulties in Maintaining Concentration, Persistence, or Pace" (Tr. 234). Dr. Tripp also completed a "Mental Residual Functional Capacity Assessment" and opined that Plaintiff was moderately limited in his ability to: understand, remember, and carry out detailed instructions (Tr. 238). Dr. Tripp opined that Plaintiff was not significantly limited in all other areas (Tr. 238-39). In summary, Dr. Tripp stated, Plaintiff "is able to do simple, sustained, unskilled tasks with

persistence" (Tr. 240). Dr. Tripp noted that Plaintiff's activities of daily living were "intact" and that he was treated for major depression "with improvement" (Tr. 240).

On May 18, 2008, Robert Piccinini, D.O., completed a "Treating Mental Health Care Professional Questionnaire" (Tr. 315-18). Dr. Piccinini reported that he had been treating Plaintiff since February 18, 2005 (Tr. 316). He described Plaintiff's symptoms as "severe depression and isolation at this time" (Tr. 316). He indicated that Plaintiff's mood was depressed, affect was congruent, concentration was poor (Tr. 316). Dr. Piccinini diagnosed Plaintiff with major depressive disorder (Tr. 316). He noted that Plaintiff was on medication, currently Cymbalta and Wellbutrin, and was having a "good response" (Tr. 316). Dr. Piccinini opined that Plaintiff had a slight degree of limitation in his ability to understand, remember and carry out simple one or two-step job instructions and perform adaptive activities such as cleaning and cooking (Tr. 317-18) and that Plaintiff had a marked degree of limitation in his ability to interact appropriately with supervisors and supervisory demands in a competitive job setting (Tr. 318). Dr. Piccinini also opined that Plaintiff was only moderately limited in all other areas, including the ability to maintain sustained concentration and attention (Tr. 317-18). Dr. Piccinini indicated that Plaintiff would be absent from work five times a month or more (Tr. 318).

On October 18, 2005, Khalid Muhammad, M.D., a State Agency Reviewing Physician, reviewed the evidence of record and opined that Plaintiff could occasionally lift and/or carry 20 pounds and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was unlimited in his ability to push and/or pull with his upper or lower extremities (Tr. 205). Dr. Muhammad also opined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb

ladders, ropes, or scaffolds (Tr. 206), and that Plaintiff's ability to reach overhead was limited due to a right rotator cuff tear (Tr. 207).

### 3. Vocational Expert

Vocational Expert ("VE") Lois Brooks also testified at the hearing (Tr. 344-352). Ms. Brooks was given two hypothetical scenarios to evaluate. The first hypothetical (Tr. 346) asked the VE to assume the following: a person of Plaintiff's age, limited education, and relevant past work as discussed, with the ability to lift to 20 pounds occasionally and 10 frequently, stand and sit six hours each in an eight hour work day, and walk two blocks; no ladder climbing, occasional stair climbing, balancing, stooping, kneeling, crouching and crawling, reaching with the right arm in all directions occasionally only; and the ability to perform simple routine tasks only with frequent but not constant interaction with the public. Under the first hypothetical, the VE testified that the individual could not perform Plaintiff's past work; however, there would be other jobs, including: small parts assembly, of which there are approximately 8,300 jobs (Tr. 347) and inspection, approximately 2,400 jobs. *Id.* These jobs are at the light level, and the numbers are reduced because of the restriction in reaching.

The second hypothetical asked the VE to assume that lifting is limited to 10 pounds occasionally and 5 pounds frequently, standing two hours in an eight hour work day, and all other restrictions as contained in the first hypothetical. The VE testified (Tr. 348) that the second hypothetical allows for a reduced number of assembly jobs, of which there are approximately 2,500; and a reduced number of inspection jobs, approximately 1,000.

The third hypothetical would modify the second hypothetical to provide for one work absence per month. The VE testified that this would not impact the jobs identified previously (Tr. 349). A

fourth hypothetical allowed for work absences of 3 or more days per month, and the VE testified that there would be no jobs within that hypothetical. *Id*.

On cross-examination, the VE testified that if the ALJ's hypothetical were further limited to lifting of 5 pounds occasionally, and no frequent lifting, then that would preclude all jobs. If the second hypothetical was further modified to no more than occasional upper body postural movements such as grasping, fine hand manipulation, reaching, pushing, pulling, twisting and turning, that would be preclusive of all work (Tr. 350). The need to rest and recline periodically during the day on an as-needed basis due to fatigue, dizziness, or pain, for several hours a day, would also preclude all jobs (Tr. 351).

### C. *Plaintiff's Claims of Error*

On appeal, Plaintiff makes numerous challenges to the ALJ's ruling in his forty-seven page brief. First, Plaintiff contends the ALJ did not properly consider his obesity in determining his residual functional capacity. *See* Plaintiff's Brief at 37-38. Second, Plaintiff contends the ALJ failed to consider his impairments in combination and the degree of functional limitation arising from the totality of all of his impairments. *Id.* at 37-39. Third, Plaintiff argues that the ALJ did not properly weigh the medical source opinions of record in determining his ability to perform work. *Id.* at 39-44. Fourth, Plaintiff argues that the ALJ did not properly assess his credibility in evaluating his claim of disability. *Id.* at 44-46. Fifth, Plaintiff argues that the ALJ improperly relied on vocational expert testimony, in arriving at his finding at step five of the sequential evaluation. *Id.* at 46-47.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for

exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. Analysis and Conclusions

As noted earlier, Plaintiff makes five main arguments on appeal. Each argument is discussed below:

    **1.    The ALJ Properly Considered Plaintiff's Obesity in Evaluating His Disability Claim**

Plaintiff's first argument is that the ALJ failed to consider Plaintiff's obesity when evaluating Plaintiff's disability claim. Defendant responds that, contrary to Plaintiff's contention, the ALJ properly considered Plaintiff's obesity in evaluating his claim of disability.

Plaintiff's argument relies upon Social Security Ruling ("SSR") 02-1p, 67 Fed. Reg. 57,859 (September 12, 2002), which provides guidance concerning SSA policy on evaluating obesity. *See* Pl.'s. Br. at 38. This Ruling recognizes that obesity is a medically determinable impairment that an ALJ must consider in evaluating disability. Defendant avers that Plaintiff has not shown that the ALJ violated this Ruling. Defendant's argument is well-taken.

Contrary to Plaintiff's suggestion, the cited Ruling does not impose a heightened articulation requirement for the evaluation of obesity, nor does it require ALJs to articulate with any particular degree of specificity what thought processes they engage in when they evaluate obesity. Most pertinently, the Ruling provides that "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 67 Fed. Reg. at 57,863. In evaluating the adequacy of the ALJ's discussion, it is noteworthy that the ALJ used the specific term "obesity" in his decision (Tr. 17, 19). It is also significant that the ALJ expressly found that Plaintiff had "severe" impairments including "obesity (he is five feet, six inches tall and he weighs 245 pounds)" (Tr. 17). *See* 20 C.F.R. § 404.1520(c). In other words, the ALJ found that Plaintiff's obesity significantly impacted his ability to do basic work activities (Tr. 17).

Furthermore, the ALJ acknowledged that Plaintiff had other severe impairments that were impacted by Plaintiff's obesity including "degenerative joint disease of the spine" (Tr. 17). Thus, the ALJ squarely addressed Plaintiff's obesity and, indeed, found it to be a severe impairment at step two of his analysis. The ALJ made clear that he understood that Plaintiff had a significant weight problem which, in turn, limited his ability to perform basic work activities. *See* 20 C.F.R. §

404.1520(c). In sum, the undersigned finds that the ALJ adequately considered Plaintiff's obesity when evaluating his disability claim.

### 2. The ALJ Properly Considered Plaintiff's Impairments in Combination

Plaintiff next contends that the ALJ did not properly consider the "total limiting effects of all of [Plaintiff's] . . . impairments" on his ability to work. Defendant responds that, contrary to Plaintiff's assertion, it is apparent from the structure of the ALJ's decision that he properly considered Plaintiff's impairments in combination and cites *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987) ("structure" of ALJ's decision shows that he considered claimant's impairments in combination). Defendant's argument is well-taken.

The Sixth Circuit has addressed the degree of articulation required of the ALJ's consideration of the "combination of impairments." *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (ALJ considers impairments in combination when he refers to impairments (plural), determines a claimant's residual functional capacity with regard to multiple impairments, and poses a hypothetical question that accommodates those impairments). *Loy* establishes that all that is required is some indication of the ALJ's thought process. In this case, the ALJ acknowledged reviewing all the medical evidence of record as it related to Plaintiff's medically determinable impairments. As he stated at the outset, he reached his decision "[a]fter careful consideration of all the evidence, including testimony at the hearing...." (Tr. 16). Thus, the ALJ was aware of the medical evidence of record and testimony in evaluating Plaintiff's disability application.

At step two of the sequential evaluation, the ALJ found that Plaintiff "has the following severe impairments: a major depression disorder, diabetes mellitus, right shoulder tendinitis and impingement with three rotator cuff repair surgeries, degenerative disc disease of the cervical spine, and obesity (he is five feet, six inches tall and he weighs 245 pounds). Collectively, these

impairments are 'severe'" (Tr. 17). Further, the ALJ noted that Plaintiff had other medically determinable impairments including "hypertension, sleep apnea, headaches, vertigo, gastroesophageal reflux disease, hyperlipidemia, and degenerative disc disease of the lumbosacral spine" (Tr. 18). Thus, contrary to Plaintiff's contention, the ALJ in this case did, in fact, consider all of Plaintiff's impairments, both severe and non-severe. However, the ALJ ultimately determined that Plaintiff did "not have any impairment or ***combination of impairments*** that meets or equals any of the impairments listed in 20 CFR 404, Subpart P, Appendix 1" (Tr. 18) (emphasis added). The excerpts quoted above establish that the ALJ explicitly undertook consideration of Plaintiff's "combination of impairments" in his decision. *See Loy*, 901 F.2 at 1310 (ALJ considered claimant's impairments in combination where the ALJ referred to "a combination of impairments" in finding that the claimant did not meet the requirements of a listed impairment and when the ALJ referred to the claimant's "impairments" in the plural). Thus, the undersigned finds that Plaintiff's second argument lacks merit.

    **3.    The ALJ Did Not Properly Weigh the Medical Source Opinions of Record In Determining Plaintiff's Ability to Perform Work**

Plaintiff next challenges the ALJ's RFC finding, by arguing that the ALJ failed to properly weigh the opinions of treating physicians – Drs. Tangalos and Piccinini – when determining Plaintiff's ability to perform work. *See* Pl.'s Br. at 39. Based on his review of the record, the ALJ determined that Plaintiff retained the RFC to:

> [P]erform a reduced range of light work. Specifically, [Plaintiff] can lift 10 pounds frequently and 20 pounds occasionally. He can sit for six hours and stand for six hours in a workday, and he can walk for two blocks at a time. He cannot climb ladders and he can occasionally climb stairs, balance, stoop, kneel, crawl, and reach in all directions with his right hand. [Plaintiff] is limited to simple, routine tasks (unskilled work) and can frequently interact with others (Tr. 19).

In arriving at this RFC, the ALJ specifically rejected the opinions and findings of Plaintiff's treating physicians. An ALJ is generally required to give a treating physician's opinion controlling weight "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record . . . ." *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (discussing the weight to be given a treating physician's opinion). Even when not given controlling weight, the opinions of treating physicians are entitled to deference. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." S.S.R. 96-2p (1996), 1996 S.S.R. LEXIS 9, at **9-10. This is so:

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.
>
> 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

If not accorded controlling weight, the ALJ must consider a series of factors in determining the weight to be accorded the treating physician's opinion, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Additionally, the ALJ "must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

After review of the record, I conclude that the decision of the ALJ did not give appropriate weight to Plaintiff's treating physicians and/or did not adequately explain why he departed from the diagnoses of those physicians, in particular the unequivocal opinions of Dr. Tangalos and Piccinini. Each of Plaintiff's treating doctors is discussed below:

### I. Theodore L. Tangalos, M.D.

Dr. Tangalos opined that Plaintiff need "to rest or recline during the day" due to fatigue and dizziness (Tr. 300). He also opined that Plaintiff could only stand for ten minutes out of an eight-hour day, sit for only thirty minutes, walk only half-a-block, and only lift five pounds occasionally and nothing frequently (Tr. 301). Further, he opined that Plaintiff's symptoms would markedly affect his ability to maintain sustained concentration, attention, and/or performance in a work setting (Tr. 302). Defendant avers that, contrary to Plaintiff's contention, the ALJ adequately explained that Dr. Tangalos' "opinion was given some weight, but not controlling weight" (Tr. 22).

In considering Dr. Tangalos' opinion, Defendant points out that the ALJ emphasized that "no such limitations were placed on him by any doctor" (Tr. 22). *See* 20 C.F.R. § 404.1527(c)(2) (medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence). It is true that the exertional limitations set forth in Dr. Tangalos' opinion are at odds with those identified in the opinion of the state agency physician, Dr. Muhammad (Tr. 205-07). The ALJ also noted that the "limitations on concentration were contradicted, or at least not supported, by mental health professionals" (Tr. 22), particularly the opinions of Drs. Tripp (Tr. 234) and Piccinini (Tr. 318). However, even where the diagnosis of Dr. Tangalos conflicted with an opinion of a consulting physician, the ALJ should have given deference to Dr. Tangalos because he was Plaintiff's treating physician. The ALJ did not adequately explain his rationale for dismissing the opinions of Dr. Tangalos as to Plaintiff's functional limitations. None of the various medical experts

involved in this matter have greater knowledge of Plaintiff's medical condition than Dr. Tangalos; he is Plaintiff's primary care physician and has been treating Plaintiff since 2002, as evidenced by the administrative record (Tr. 147-182; 299-314). Dr. Tangalos has conducted clinical examinations, laboratory and other tests, and administered various forms of treatment and his opinion is not inconsistent with any substantial evidence in the record. It has repeatedly been held that the opinions of a treating physician are entitled to great weight and generally are entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers*, 486 F.3d at 242; *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Hurst v. Scheweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Stamper v. Harris*, 650 F.2d 108, 111 (6th Cir. 1981); *Branham v. Gardner*, 383 F.2d 614, 634 (6th Cir. 1967). Thus, the undersigned finds that the ALJ erred in summarily dismissing the opinions of Dr. Tangalos.

### ii. Robert Piccinini, M.D.

The ALJ also failed to give appropriate weight to the opinion of Dr. Piccinini. Dr. Piccinini is a treating specialist in the field of psychiatry and treated Plaintiff regularly over a period of years, conducting numerous clinical examinations, and administering various forms of treatment including therapy and medications (Tr. 253-298). Dr. Piccinini completed a questionnaire to report in detail on Plaintiff's mental conditions, treatments and impairments (Tr. 315-318). Dr. Piccinini opined that Plaintiff had a marked degree of limitation in his ability to interact appropriately with supervisors and supervisory demands in a competitive job setting (Tr. 318). Notwithstanding this unequivocal opinion, the ALJ appeared to rely heavily on the fact that Dr. Piccinini reported that Plaintiff was on Cymbalta and Wellbutrin and having a "good response" (Tr. 22 citing Tr. 316). Just because Plaintiff's depression may be responding to medication does not automatically mean that Plaintiff

is fit to return to the work-force. As such, the ALJ rejected Dr. Piccinini's opinions without substantial support.

As the undersigned finds that the ALJ failed to give controlling weight to the opinions of Plaintiff's treating physicians, it is not necessary to consider Plaintiff's remaining arguments concerning Plaintiff's credibility and the ALJ's reliance on the VE's testimony. The undersigned recommends that this matter be remanded for a new hearing so that the ALJ can, at a minimum, explain more fully why the ALJ disregarded the opinions of Plaintiff's treating physicians.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED,** that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for a new administrative hearing.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2010

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 6, 2010.*

*S/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*<br>
*(313) 234-5542*